Caruthers, J.,
delivered the opinion of the Court.
George Johnson sold his whole crop of cotton of 1858, on 'the 27th of December, of that year, the same being then all picked out, at $2.60 per hundred pounds, in the seed, to the plaintiff. By the terms of the contract, the vendee was to furnish the wagon and team, and the vendor was to deliver the cotton at the gin of Currie,’ and payment to be made at the gin weights, one hundred dollars in a debt Johnson owed Bush, and the balance in money, when the quantity was ascertained at the gin. The quantity turned out to be .12,645 pounds, and made seven bales; but before the delivery of the whole, and when five bales had been made, and some of them marked with the initials of tbe petitioner, the defendant, as an officer, levied an execution against *94 Johnson, upon it, whereupon this action of replevin was instituted. He failed in his action, upon the ground that the title had not passed out of Johnson at the time of the levy. The verdict of the jury was correct, as applicable to the facts of the case; and the question for examination is, whether His Honor was right in his charge. He held, that property in the cotton would not pass, until the whole crop had been delivered and weighed, unless it were shown, on the part of Bush, that he had accepted, or received, the part delivered, by some act of ownership over it, before the levy of the defendant.
We think this was erroneous. The delivery of the cotton at the gin of Currie, where it was ginned and baled, in compliance with the contract of the parties, left nothing more to be done by the vendor, and passed the title to the vendee. It was equivalent to a delivery to the purchaser. Currie, by the contract, was constiluted his agent, to receive and weigh. This would apply to a part, as well as the whole, without the exercise of any acts of ownership, as seemed to be considered essential by His Honor, from the charge. He became owner, by the contract of purchase, as soon as the cotton, ór any part of it, was delivered at the gin, and weighed. The ownership, with all risks, was instantly changed. Kent says, 2 Com., 492, “When everything the seller has to do with the goods, is complete, the contract of sale becomes absolute, without actual payment, or delivery, and the property, and the risk of accident to the goods, vest in the buyer. ”
Where a quantity of turpentine was sold, at a price fixed per hundred weight, to be put into casks by the *95 vendor, and when this bad been done as to part, and was ready for, though not delivered, but set apart for the vendee, and at his disposal, in the warehouse of the vendor, it was held, that the property and risk had passed to that part which had been put up, but not the other: Addison on Con., 226, citing 11 East, 210. So in the case before us. The whole was bought at a price fixed for each hundred pounds, and the mode of ascertaining that, and the place of delivery agreed upon, and five of the bales actually weighed, and put up in bales. Must not the same principle govern, and fully change the ownership, as to the five bales? If they had been consumed by fire, would not the loss have fallen upon the purchaser ?
The case of Williams vs. Allen, 10 Humph., 337, does not contravene this view of the law, but lays down principles, upon authorities cited, which clearly sustain it. There, the contract was to take all the corn in certain pens, at one dollar per barrel, the quantity to be ascertained afterwards, by actual measurement. No time was fixed for the measurement, or payment of the price. Before this was done, a flood came and washed off the corn, and that Court decided that the loss was that of the vendee, as the title had not passed. But, suppose one of the pens had been measured and delivered to the purchaser, or his agent, would not the title to that have passed? That is this case, and the case cited in Addison, from 11 East.
We think, when the five bales were weighed, and turned off at the gin, in pursuance of the contract, the ownership passed out of Johnson to the purchaser.
*96 The charge, then, is erroneous, and the judgment must be reversed.
It is insisted that the sale was fraudulent, being made by the son-in-law to the father-in-law, to defraud the creditors of the former. That will be a question for the jury, on another trial, upon a correct charge on the other point. It is enough to say, that we see no sufficient evidence of it in this record.